[Cite as *State v. Bolling*, 2019-Ohio-4093.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28321 |
| | : | |
| v. | : | Trial Court Case No. 2003-CR-73 |
| | : | |
| ANTHONY K. BOLLING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of October, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ANTHONY K. BOLLING, Inmate No. 458-436, London Correctional Institution, P.O. Box 69, London, Ohio 43140
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Anthony K. Bolling, appeals pro se from the decision of the Montgomery County Court of Common Pleas overruling his motion for leave to file a delayed motion for new trial and denying his petition for post-conviction relief. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} In 2003, a jury found Bolling guilty of four counts of rape of a child under the age of 13 and one count of felonious sexual penetration of a child under the age 13. The trial court sentenced Bolling to multiple life sentences for these offenses. Bolling then appealed from his conviction, which we affirmed in *State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509 ("*Bolling I*").

{¶ 3} Following his direct appeal, on July 5, 2006, Bolling filed a motion for leave to file a delayed motion for new trial and a corresponding motion for new trial based on newly discovered evidence. The newly discovered evidence consisted of several affidavits from individuals who averred to certain information that Bolling claimed was either inadmissible or unavailable at the time of trial. The trial court overruled Bolling's motion for leave to file a delayed motion for new trial, and we affirmed that decision in *State v. Bolling*, 2d Dist. Montgomery No. 21874, 2007-Ohio-5976 ("*Bolling II*").

{¶ 4} Four months after our opinion in *Bolling II*, on March 11, 2008, Bolling filed a motion to preserve evidence of an audiotape[1] that was submitted at his trial. The

---

[1] Bolling specifically moved to preserve two audiotapes which were marked as State's Exhibit Nos. 1 and 2. Both audiotapes, however, contain the same content. One of the audiotapes is simply an enhanced copy that made the voices on the recording louder.

audiotape contained recorded telephone conversations between Bolling and the victim. In the tape, Bolling can be heard apologizing for his conduct and attempting to convince the victim not to pursue the matter. The State did not oppose Bolling's motion to preserve the audiotape, and the trial court sustained the motion.

{¶ 5} At the same time Bolling filed his motion to preserve the audiotape, Bolling also filed a motion to access the audiotape as a public record under R.C. 149.43. In the motion, Bolling indicated that he wanted to access the audiotape for purposes of having it analyzed by an expert forensic audio analyst. Bolling claimed that such an analysis would furnish exculpatory evidence regarding the creation of the audiotape and establish that prior content on the audiotape had been erased or taped over.

{¶ 6} The State opposed Bolling's R.C. 149.43 motion to access the audiotape on grounds that Bolling had not presented a justiciable claim for review. The State argued that there was no justiciable claim because the record indicated that, prior to trial, Bolling had access to the audiotape and knew that the victim had recorded over the audiotape while recording subsequent conversations with him. The trial court agreed with the State's argument and overruled Bolling's motion.

{¶ 7} Bolling thereafter appealed from the trial court's decision overruling his motion to access the audiotape, which we affirmed in *State v. Bolling*, 2d Dist. Montgomery No. 22880, 2009-Ohio-4400 ("*Bowling III*"). In affirming the trial court's order, we held that Bolling sought the audiotape to support a post-conviction attempt to exonerate himself and that " 'a defendant in a criminal case who has exhausted the direct

Therefore, when referring to the "audiotape" in this appeal, we are in fact referencing both the original and enhanced copy.

appeals of * * * his conviction may not avail * * * himself of R.C. 149.43 to support a petition for postconvcition relief.' " *Bolling III* at ¶ 13, quoting *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, 853 N.E.2d 657, ¶ 11.

**{¶ 8}** A year after our decision in *Bolling III*, Bolling's brother, Jerry Bolling, along with two other individuals, filed multiple Freedom of Information Act requests in the trial court wherein they requested copies of the audiotape at issue. On September 10, 2010, the trial court granted their requests, noting that the cost of duplicating the audiotape would be $70 per person. Despite the trial court granting their requests, neither Bolling nor his brother took any further action on the matter for six years.

**{¶ 9}** It was not until September 23, 2016, that Bolling's brother and one of the other individuals who had filed a Freedom of Information Act request filed a subsequent motion for an order to access the *original* audiotape. In the subsequent motion, it was claimed that the copy of the audiotape provided by the court administrator was inadequate for forensic analysis. In ruling on the motion, the trial court found that Bolling's brother, a non-party, was effectively rendering a legal service for Bolling and making the same request that Bolling had made in his 2008 motion to access the audiotape under R.C. 149.43. Because this court had already held in *Bolling III* that Bolling could not avail himself of R.C. 149.43 to support a petition for post-conviction relief, the trial court overruled the motion filed by Bolling's brother.

**{¶ 10}** Following that decision, on July 27, 2017, Bolling filed a motion for resentencing on the ground that the trial court had failed to properly impose post-release control. The trial court granted Bolling's motion for resentencing and resentenced Bolling

for the sole purpose of properly imposing post-release control. In doing so, the trial court denied Bolling's request to be resentenced de novo.

**{¶ 11}** In addition to resentencing Bolling to the proper term of post-release control, the trial court issued a nunc pro tunc sentencing entry that corrected multiple omissions in the original sentencing entry. Specifically, the nunc pro tunc entry added the manner in which Bolling was convicted, the fact that the trial court had considered the purposes and principles of sentencing in R.C. 2929.11 and R.C. 2929.12, and the findings that the trial court had made at the original sentencing hearing in support of imposing consecutive sentences. Bolling thereafter appealed from the trial court's decision denying his request to hold a de novo resentencing hearing. We, however, affirmed the trial court's decision in *State v. Bolling*, 2d Dist. Montgomery No. 27923, 2019-Ohio-227 ("*Bolling IV*").

**{¶ 12}** While the appeal in *Bolling IV* was pending, on October 25, 2018, Bolling filed a second motion for leave to file a delayed motion for new trial and a corresponding motion for new trial based on newly discovered evidence. The newly discovered evidence was an analysis report prepared by forensic audio expert, Herbert Joe. In an affidavit attached to his motion for new trial, Bolling explained that in April 2017, his brother obtained a sufficient copy of the audiotape from "the records custodian" and then sent the copy to Joe for analysis. Bolling averred that Joe completed his analysis and prepared an expert report on June 19, 2018. Bolling attached a copy of Joe's expert report which, in pertinent part, concluded that there were previous statements on the audiotape that had been "deleted, erased over or otherwise omitted."

**{¶ 13}** In his motion for leave, Bolling claimed that Joe's expert analysis contradicted the victim's testimony that the audiotape "fairly and accurately contain[ed]

all statements made by her and all statements that were made by [Bolling.]" Bolling claims that if Joe's analysis had been available at trial, the jury would have known that the State had filtered out other conversations on the audiotape, which would have placed considerable doubt on the credibility of the State's witnesses and the authenticity of the audiotape. Bolling claimed that he was unavoidably prevented from obtaining Joe's expert analysis because he was unable to access the audiotape "due to lack of resources, finances, [and] impediments or decisions by the state or state courts or otherwise[.]"

{¶ 14} On the same day he filed his motion for leave and motion for new trial, Bolling also filed a petition for post-conviction relief. In the petition, Bolling alleged that his trial counsel provided ineffective assistance by failing to investigate the authenticity and credibility of the audiotape and by failing to retain an audio expert to examine the audiotape.

{¶ 15} After taking the matter under advisement, on February 13, 2019, the trial court issued a decision and entry overruling Bolling's motion for new trial and denying his petition for post-conviction relief. In so holding, the trial court found that Bolling's motion and petition were both filed beyond the statutory deadlines set forth in Crim.R. 33(B) and R.C. 2953.21(A)(2). The trial court further held that the untimeliness of Bolling's filings was not excused because he failed to demonstrate that he was unavoidably prevented from timely accessing the audiotape for purposes of obtaining the expert audio analysis.

{¶ 16} Bolling now appeals from that decision and raises two assignments of error for review.

**First Assignment of Error**

**{¶ 17}** Under his first assignment of error, Bolling contends that the trial court erred in overruling his motion for new trial without first ruling on his motion for leave to file a delayed motion for new trial. Bolling also contends that, even if this court finds that the trial court properly addressed his motion for leave, the trial court nevertheless erred in overruling it. We disagree.

**{¶ 18}** As previously noted, Bolling simultaneously filed a motion for leave to file a delayed motion for new trial and a motion for new trial based on newly discovered evidence. Pursuant to Crim.R. 33(A)(6), a convicted defendant is permitted to file a motion for new trial on grounds that "new evidence material to the defense has been discovered that the defendant could not with reasonable diligence have discovered and produced at trial." *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 15 (2d Dist.). There is, however, a specific time limitation in which a motion for new trial based on newly discovered evidence must be filed. Pursuant to Crim.R. 33(B), "[m]otions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered[.]"

**{¶ 19}** "In order to file a motion for new trial beyond the 120-day time limitation specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion." (Citations omitted.) *State v. Moore*, 2d Dist. Clark No. 2017-CA-49, 2018-Ohio-318, ¶ 16. Crim.R. 33(B) does not prescribe a specific timeframe for when a motion for leave must be filed, but this court has held that it must be filed "within a reasonable time" after a defendant discovers the new evidence on which his motion for new trial is based. (Citations and emphasis omitted.) *State v. York*, 2d Dist. Greene No. 2000 CA 70, 2001 WL 332019, *4 (Apr. 6, 2001). *Accord State v. Warren*, 2d Dist.

Montgomery No. 28092, 2019-Ohio-3522, ¶ 72 and 74.

{¶ 20} "To obtain leave to file a delayed motion for new trial, the defendant 'must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).' " *Moore* at ¶ 17, quoting *State v. Warwick*, 2d Dist. Champaign No. 01CA33, 2002 WL 1585663, *2 (July 19, 2002). Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fac[t] a firm belief or conviction as to the facts sought to be established.' " *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. (Other citation omitted.) " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *Parker* at ¶ 16, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 21} This court reviews a trial court's ruling on a motion for leave to file a delayed motion for new trial for an abuse of discretion. *State v. Risden*, 2d Dist. Montgomery No. 25234, 2013-Ohio-1823, ¶ 11. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery Nos. 24461, 24496, 24501, 2012-Ohio-1660, ¶ 29. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply

unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 22} In this case, almost 15 years after his verdict was rendered, Bolling simultaneously filed a motion for leave to file a delayed motion for new trial and a corresponding motion for new trial. Because his motion for new trial was clearly untimely, as part of his motion for leave, Bolling was required to demonstrate that he was unavoidably prevented from timely filing his motion for new trial. As previously noted, "a party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Walden* at 145-146.

{¶ 23} Here, Bolling's motion for new trial was based on newly obtained evidence from a forensic audio expert who analyzed the audiotaped telephone conversations between Bolling and the victim. The pertinent portion of the expert's analysis concluded that there were previous statements on the audio recording that had been "deleted, erased over or otherwise omitted." However, after a thorough review of the record, we find that even without the newly obtained expert analysis, Bolling was aware of the fact that there were previously recorded statements on the audiotape before his trial.

{¶ 24} The record establishes that Bolling received the audiotape from the State prior to trial. After receiving the audiotape, the record indicates that on May 8, 2003, Bolling filed a motion in limine in which he moved the trial court to suppress the admission

of the audiotape on grounds that the "the tape may have been tampered with." Motion in Limine Suppressing State's Witness and Evidence (May 8, 2003), Montgomery C.P. No. 2003-CR-0073, p. 1. Thereafter, on July 29, 2003, Bolling also filed a pretrial motion for an evidentiary hearing in which he argued the following:

> Previously it was disclosed that the same detective left an undisclosed number of tapes with the complaining witness and her mother and instructed them to tape the defendant's conversations. It is unclear how many tapes the detective left with the complainant and her mother and it is unclear what instructions he gave them ***but it is uncontroverted that the complainant's mother and perhaps the complainant taped a least one conversation and then used the same tape to tape over it.*** The Defendant, if called to testify for the limited purpose of this issue, would testify as to the nature of the conversations that were probably taped and the topics thereof*.* It is submitted that the Defendant's remarks and the topics discussed during the erased conversations were exculpatory in nature.

(Emphasis added.) Motion and Demand for Evidentiary Hearing (July 29, 2003), Montgomery C.P. No. 2003-CR-0073, p. 2. Therefore, the record indicates that Bolling had knowledge of the existence of the ground supporting his motion for new trial as early as May or July 2003.

{¶ 25} The fact that Bolling was aware of the issue with the audiotape during trial was also alluded to in several of his post-conviction motions. In his 2008 motion to access the audiotape under R.C. 149.43, Bolling noted that "the creation of these tapes

was not only in dispute, but the complaining witness almost inadvertently let slip during cross examination that, in fact, several phone conversations were recorded and some were erased in the creation of the tape [that] was ultimately used in evidence." Similarly, in the motion for new trial at issue in this appeal, Bolling also noted that he "testified at trial about these other conversations, in fact he testified that there were more than 20 conversations with [the victim's mother] during the time period in which the recording was made" and "that there was an extensive conversation with [the victim] in the so-called 'confrontation tape' call prior to her turning the recorder on."

**{¶ 26}** Although Bolling had longstanding knowledge of the ground supporting his motion for new trial, Bolling provides no reasonable excuse for why it took him over 14 years to obtain the audiotape and have it analyzed. The record indicates that Bolling did not request the audiotape for forensic analysis until 2008 when he filed his R.C. 149.43 motion. Bolling therefore waited five years after his conviction to request the audiotape. Bolling fails to explain why he never attempted to obtain the audiotape earlier so that he could have addressed it in his first motion for new trial, which he filed in 2006.

**{¶ 27}** The record also indicates that in September 2010, Bolling's brother and two other individuals successfully obtained copies of the audiotape as part of a Freedom of Information Act request, but then took no action on the matter for six years. It was not until September 2016, that Bolling's brother filed a subsequent motion requesting the original audiotape on grounds that the copy provided by the court administrator was insufficient for audio analysis. Bolling provided no explanation for the six-year delay. Although Bolling averred that his brother was able to obtain a sufficient copy of the audiotape in April 2017, Bolling fails to explain why a sufficient copy of the audiotape

could not have been requested and obtained earlier.

{¶ 28} For the foregoing reasons, the trial court did not abuse its discretion in overruling Bolling's motion for leave to file a delayed motion for new trial. More specifically, it was not unreasonable for the trial court to find that Bolling was not unavoidably prevented from filing his motion for new trial when, for over 14 years, Bolling knew about the issue with the audiotape on which his motion for new trial was based and failed to request and obtain a copy of the audiotape for analysis within a reasonable time.

{¶ 29} Moreover, contrary to Bolling's claim otherwise, the fact that the trial overruled the motion for new trial, as opposed to the motion for leave, is immaterial. It is clear from the trial court's written decision that the court found Bolling's motion for new trial untimely and that Bolling was not unavoidably prevented from filing the motion. Because the trial court's holding reflects the appropriate Crim.R. 33(B) standard for granting or denying leave, and because the merits of Bolling's motion for new trial were never addressed, we find that the trial court's decision properly ruled on Bolling's motion for leave to file a delayed motion for new trial.

{¶ 30} Bolling's first assignment of error is overruled.

## Second Assignment of Error

{¶ 31} Under his second assignment of error, Bolling contends that the trial court erred in denying his petition for post-conviction relief. Specifically, Bolling contends that the trial court incorrectly determined that his petition was untimely and that the trial court lacked jurisdiction to rule on the petition. We disagree.

{¶ 32} "When a direct appeal of the judgment of conviction has been taken * * *, a

petition for post-conviction relief must be filed no later than 365 days 'after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication.' " *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 12, quoting R.C. 2953.21(A)(2). "Trial courts lack jurisdiction to consider an untimely or successive petition for post-conviction relief, unless the untimeliness is excused under R.C. 2953.23(A)." *Id.*, citing *State v. Current*, 2d Dist. Champaign No. 2012 CA 33, 2013-Ohio-1921, ¶ 16.

**{¶ 33}** "Pursuant to R.C. 2953.23(A)(1)(a), a defendant may not file an untimely or successive petition for post-conviction relief unless (1) the defendant was unavoidably prevented from discovering the facts upon which he or she relies to present the claim, or (2) the United States Supreme Court recognizes a new federal or state right that applies retroactively to his or her situation and the petition asserts a claim based on that right." *Id.* at ¶ 13. "The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty." *Id.*, citing R.C. 2953.23(A)(1)(b). "We review trial court decisions on petitions for post-conviction relief under an abuse of discretion standard." (Citations omitted.) *State v. Perkins*, 2d Dist. Montgomery No. 25808, 2014-Ohio-1863, ¶ 27.

**{¶ 34}** In this case, Bolling filed his petition for post-conviction relief after filing a direct appeal from his conviction. A transcript of the trial court proceedings was filed with this court in Bolling's direct appeal on May 17, 2004. Bolling's petition for post-conviction relief was filed over 14 years later on October 25, 2018. Therefore, Bolling's petition was clearly filed beyond the 365-day time limitation set forth in R.C. 2953.21(A)(2).

**{¶ 35}** Bolling, however, argues that his petition was timely filed because the nunc

pro tunc sentencing entry filed on February 5, 2018, reset the time from which the 365-day deadline is counted. Bolling is wrong. A nunc pro tunc entry is "used only to correct clerical errors, such as a mistake or omission that is mechanical in nature and apparent on the record and which does not involve a legal decision or judgment." *State v. Day*, 2d Dist. Greene No. 2012 CA 0011, 2012-Ohio-4620, ¶ 14. Therefore, a nunc pro tunc entry does not resentence the defendant. *See id.*; *State v. Hill*, 2d Dist. Montgomery No. 26581, 2015-Ohio-5166, ¶ 22.

**{¶ 36}** Although the trial court did resentence Bolling to the proper term of post-release control, only the post-release control portion of Bolling's original sentence was void. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. "[A] sentence that is void because it does not properly include post-release control 'd[oes] not "restart the clock" to extend [the] time to file a post-conviction relief petition.' " *State v. Dawson*, 2d Dist. Greene No. 2012-CA-54, 2013-Ohio-1817, ¶ 11, quoting *State v. Casalicchio*, 8th Dist. Cuyahoga No. 89555, 2008-Ohio-2362, ¶ 22. Therefore, Bolling's claim otherwise lacks merit.

**{¶ 37}** Bolling also claims that even if his petition for post-conviction relief was untimely, the trial court had jurisdiction to review it because he was unavoidably prevented from discovering the facts upon which the claim in his petition was based. When dealing with petitions for post-conviction relief, "[t]he phrase 'unavoidably prevented' means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Rainey*, 2d Dist. Montgomery No. 23851, 2010-Ohio-5162, ¶ 13, quoting *State v. McDonald*, 6th Dist. Erie No. E-04-009, 2005-Ohio-798, ¶ 19.

{¶ 38} In this case, Bolling's petition for post-conviction relief alleges that his trial counsel was ineffective in failing to investigate the authenticity and credibility of the audiotape and by failing to retain an audio expert to examine the audiotape. However, as discussed under Bolling's first assignment of error, the record indicates that, prior to trial, Bolling and his trial counsel knew of the existence of the audiotape, had a copy of the audiotape, and were aware of the fact that the victim had taped over prior conversations on the audiotape. Most importantly, Bolling was aware of the fact that his trial counsel did not obtain an audio expert to review the audiotape prior to trial.

{¶ 39} Although Bolling did not obtain the audio expert's report until 2018, the record nevertheless establishes that, for over 14 years before fling his petition, Bolling knew about the issue with the audiotape and knew that his trial counsel had not obtained an audio expert for trial. Furthermore, the record does not establish that Bolling was unable to obtain the expert's report through reasonable diligence, as Bolling waited five years after his conviction to request the audiotape for analysis and then failed to consistently pursue the matter over the next nine years. Therefore, we cannot say that the trial court abused its discretion in finding that Bolling was not unavoidably prevented from discovering the facts upon which the claim in his petition for post-conviction relief was based.

{¶ 40} For the foregoing reasons, Bolling's second assignment of error is overruled.

## Conclusion

{¶ 41} Having overruled both assignments of error raised by Bolling, the judgment

of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Anthony K. Bolling
Hon. Mary E. Montgomery